UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIHOA T. NGUYEN,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>　　　　　　　　　Defendant. | Case No.:  16cv1535 JAH-SBC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND GRANTING PLAINTIFF'S MOTION FOR JUDGMENT**<br>**[ECF Nos. 26, 34, 40]** |

**INTRODUCTION**

Plaintiff seeks review of the Social Security Commissioner's final decision denying benefits for disability insurance under Titles II and XVI of the Social Security Act. After a thorough review of the parties' submissions and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment and REMANDS the matter for additional proceedings.

//

---

[1] Martin O'Malley is named in place of Nancy A. Berryhill as Commissioner of Social Security Administration pursuant to Fed.R Civ.P. 25(d).

# BACKGROUND

Plaintiff was 59 years of age at the time of the hearing before the Administrative Law Judge ("ALJ").  AR[2] at 51 (ECF No. 21).  She alleged a disability onset of December 1, 2008.  *Id*. at 34.  She filed an application for supplemental security income on November 26, 2012.  *Id*.  The Commissioner denied the claim on April 12, 2013, and denied the claim again upon reconsideration.  *Id*.  Plaintiff requested a hearing and testified at the hearing on November 7, 2014.  *Id*. at 34, 49.  The ALJ issued an unfavorable decision on February 10, 2015.  *Id*. at 31-42.  Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied the request.  *Id*. at 2, 24.

Plaintiff, appearing through counsel, filed a complaint seeking review of the Commissioner's final decision denying benefits on June 18, 2016.  *See* ECF No. 1.  Defendant filed a motion to dismiss which Plaintiff opposed.  *See* ECF Nos. 11, 13, 14.  After converting the motion to dismiss to a motion for summary judgment to consider evidence submitted by the parties, the Court denied the motion.  *See* ECF Nos. 18, 19.  Defendant filed an answer and the administrative record on May 24, 2018.  *See* ECF Nos. 20, 21.  On October 26, 2018, Plaintiff filed the pending motion for summary judgment and Defendant filed an opposition and cross-motion for summary judgment after numerous requests for an extension of time.  *See* ECF Nos. 26, 34, 35.  Plaintiff filed a reply.  *See* ECF No. 37.

# DISCUSSION

**I. Legal Standards**

**A. Qualifying for Disability Benefits**

To qualify for disability benefits under the Act, an applicant must show that: (1) she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

---

[2] AR refers to the administrative record.

months; and (2) the impairment renders the applicant incapable of performing the work that she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(1)(A), 2(A). An applicant must meet both requirements to be "disabled." *Id*.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If she is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404 Appendix 1 to Subpart P. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If a condition "falls short of the [listing] criterion" a multiple factor analysis is appropriate. *Celaya v. Halter,* 332 F.3d 1177, 1181 (9th Cir. 2003). Of such analysis, "the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id*. at 1182 (quoting 42 U.S.C. § 423(d)(2)(B)). If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant cannot perform her previous work, the fifth and final step of the process determines whether she is able to perform other work in the national economy considering her age, education, and work experience. The claimant is entitled to disability benefits only if she is not able to perform other work. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## B. Judicial Review of an ALJ's Decision

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited. The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citing *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984)). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

However, even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. *Id*. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."

*Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

**II. The ALJ's Decision**

The ALJ found Plaintiff has not engaged in substantial gainful activity since November 26, 2012, and has severe impairments, including "somatoform disorder; anxiety disorder; posttraumatic stress; depressive disorder; pain in back, neck and knees; and headaches." AR at 35. The ALJ determined Plaintiff's carpal tunnel syndrome ("CTS") and hypertension are not severe impairments. *Id*. The ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or are medically equal in severity to one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. *Id*.

The ALJ found Plaintiff has a residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except the claimant, who does not read or write English and cannot read in English, can perform unskilled simple repetitive tasks; the claimant can have no more than occasional contact with the public, co-workers, and supervisors; and the claimant is limited to a non-time contingent work setting.

*Id*. at 36. Although the impairments could reasonably cause Plaintiff's symptoms the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible because they were greater than expected in light of the objective evidence of record including the clinical and diagnostic findings since the date of onset. *Id*. at 38.

The ALJ gave less weight to the opinions of Plaintiff's treating physicians James Grisolia, M.D., Harry Henderson, M.D.. Don Edward Miller, Ph.D., and Nadine Sidrick, M.D. and to the state agency reviewers, Jay Flocks, M.D., F. L. Williams, M.D. and B. Harris, M.D. *Id*. at 38, 39, 40. The ALJ gave great weight to the opinion of David Anderson, M.D., who testified at the hearing, reviewed the record and heard Plaintiff's testimony. *Id*. at 40.

The ALJ determined Plaintiff was able to perform her past relevant work, kitchen help, and, therefore, has not been under a disability as defined by the Act from February 21, 2017. *Id*. at 41.

## III.  Analysis

Plaintiff contends the ALJ erred by (1) adopting the testimony of a psychiatric expert in evaluating her physical impairments; (2) disregarding the opinions of Plaintiff's treating physicians, Dr. Grisolia and Dr. Sidrick; (3) disregarding the opinions of treating physicians Dr. Henderson and Dr. Miller; (4) determining her CTS and fibromyalgia were not severe impairments; and (5) discrediting her testimony, all of which demonstrates the ALJ's decision is not supported by substantial evidence of record.

### A.  ALJ Reliance on Psychiatrist Expert

Plaintiff argues the ALJ improperly relied on the medical expert, Dr. Anderson, a psychiatrist, to determine Plaintiff's physical impairments. She contends the ALJ's first reason for denying benefits was based upon the testimony of Dr. Anderson who opined Plaintiff was limited to simple repetitive tasks and the ALJ erroneously claimed Dr. Anderson opined on the totality of Plaintiff's physical and mental impairments.

Defendant argues the ALJ did not rely on the medical expert for his RFC assessment for light work. The medical expert opined as to Plaintiff's mental limitations only. The ALJ based the light RFC assessment upon Plaintiff's testimony, the function reports and treatment records.

In the written decision, the ALJ noted Dr. Anderson opined, "from a psychiatric standpoint", that there was sparse objective medical evidence, and conclusions contained in a particular medical source statement were not supported by medical evidence. AR at 40.  The ALJ noted Dr. Anderson "remarked" the record regarding Plaintiff's physical issues were primarily statements and conclusions. However, the ALJ stated the light RFC determination was supported by Plaintiff's testimony, the disability and function reports and the treatment records. *Id*.  As such, the ALJ did not improperly rely on Dr. Anderson's testimony regarding physical limitations.

## B. Rejecting Treating Physician Opinions

Plaintiff argues the ALJ improperly rejected the opinions of her treating physicians, Drs. Grisolia, Sidrick, Henderson and Miller. "[A]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Where a treating doctor's or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even if the treating or examining doctor's opinion is contradicted by another doctor, the ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

### 1. Dr. Grisola

Plaintiff contends the ALJ erroneously disregarded the opinion of Dr. Grisolia, a neurologist, who noted disabling CTS, bilateral knee pain and headaches by wrongfully claiming that Dr. Grisolia was a one-time examining physician whose opinion should not be given much weight. However, Plaintiff contends, Dr. Grisolia, was a treating physician who is entitled to deference as a specialist. Plaintiff argues the ALJ failed to provide

specific and legitimate reasons based on substantial evidence in the record for rejecting Dr. Grisolia's opinion.

In opposition, Defendant maintains the fact Plaintiff was seen more than once by Dr. Grisolia does not alter the ALJ's decision. He contends the ALJ explained that Dr. Grisolia's opinion was inconsistent with the medical evidence and was made in a single evaluation. Defendant further contends the latter treatment record of January 2014 by Dr. Grisolia notes that Plaintiff had CTS but also reports Plaintiff had normal muscle strength and tone in all limbs, intact sensation in all limbs, normal reflexes in all limbs, and normal gait. Additionally, Defendant argues the ultimate question of permanent disability is for the agency not a doctor. As such, Defendant argues, the ALJ properly excluded any statements of Plaintiff's alleged permanent disability by Dr. Grisolia. Furthermore, Defendant contends the ALJ reasonably concluded Plaintiff's CTS was not severe because it was not supported by Dr. Grisolia's treatment records or any other medical evidence.

In the written decision, the ALJ indicated he gave less weight to Dr. Grisolia's "statements of disability" provided during the "one-time evaluation" conducted on July 27, 2013, because it was inconsistent with the record and not supported by objective evidence. AR at 39. The ALJ noted that the July 27, 2013 evaluation contained "no objective physical examination findings and no tunnel conduction studies and the neurological exam indicated she had normal strength in the lower extremities, brisk reflexes with no evidence of polyneuropathy and intact gait and coordination." *Id*. at 38-39.

The record clearly demonstrates Dr. Grisolia treated Plaintiff more than once. Specifically, in a letter dated December 7, 2013, Dr. Grisolia notes, during an examination on November 20, 2013, Plaintiff's "hands continue to be weak with reduced grip strength and loss of coordination" and opines that Plaintiff is "completely disabled from any regular use of the hands for any repetitive, forceful or skilled activities on either side" until she has surgery. *Id*. at 316. He also opines Plaintiff is disabled by her complaints of severe knee pain, daily headaches and right shoulder pain. *Id*. Additionally, in progress notes dated January 28, 2014, Dr. Grisolia assesses Plaintiff's CTS and again discusses the need for

surgery. *Id*. at 317. Dr. Grisolia reports "bulk is normal, giveaway weakness in all limbs, tone normal" as far as Plaintiff's motor strength, that sensory is intact and normal gate. *Id*. The ALJ does not discuss these additional evaluations and opinions provided by Dr. Grisolia which appear to support the previous findings. Additionally, Dr. Sidrick, another treating physician, opines Plaintiff should avoid repetitive use of her right hand and reports "possible" CTS. *Id*. at 296. The Court finds, contrary to the ALJ's findings, there is objective evidence of record to support Dr. Grisolia's opinion. Accordingly, the ALJ fails to provide specific and legitimate reasons for giving minimal weight to Dr. Grisolia's opinion.

**2. Dr. Sidrick**

Plaintiff maintains, Dr. Sidrick, who treated Plaintiff for low back and neck pain, hand pain, and headaches, opined that Plaintiff's functional capacity was limited to sedentary type activities such as lifting and carrying 10 pounds on an occasional basis with a break of fifteen minutes every hour due to degenerative discogenic disease of the cervical and the lumbar spine. She further maintains Dr. Sidrick concurred with Dr. Grisolia's finding that Plaintiff had such severe CTS causing hand pain and poor grasping that would prevent Plaintiff from using her right hand for any work-related activities.

In opposition, Defendant argues there are very little treatment records supporting Dr. Sidrick's assessment. He maintains Dr. Sidrick admitted Plaintiff's pain was relieved, although minimally, by over-the-counter medication. Additionally, Defendant maintains the ALJ pointed to the findings of Plaintiff's cervical spine x-ray. Defendant contends nothing supports Dr. Sidrick's extreme limitations and Plaintiff fails to point to any medical records that support the limitations afforded by Dr. Sidrick.

The ALJ explained he gave less weight to Dr. Sidrick's medical source statement dated August 14, 2014, because Plaintiff's cervical spine x-ray indicated no fracture, dislocation, normal disc spaces and vertebral bodies, and unremarkable soft tissue and normal posterior structure. AR at 39. The ALJ appears to substitute his interpretation of the MRI results over Dr. Sidrick's. While an ALJ may weigh and resolve conflicting

opinions or evidence, it is improper to substitute his judgment or make his own medical findings. *See Rohan v. Chater*, 98 F.3d 966, 970-71 (9th Cir.1996); Jenkins v. Astrue, 628 F. Supp. 2d 1140, 1149 (C.D. Cal. 2009) ("It is axiomatic that as a treating physician and a specialist. . ., [the treating physician's] interpretation of her objective and clinical findings trumps a contrary interpretation based on nothing more than the ALJ's conflicting view of their significance").   The ALJ fails to provide sufficient reasons for rejecting Dr. Sidrick's opinion.

**3. Dr. Henderson**

Plaintiff contends she was treated by Dr. Henderson, psychiatrist, beginning in 2012. She maintains Dr. Henderson concluded that she is significantly impaired from a mental viewpoint and assigned her a global assessment of function ("GAF") score of 40. Plaintiff argues the ALJ's stated reason for rejecting Dr. Henderson's opinion, absence of objective treatment records, fails because Dr. Henderson provided a report which described the Plaintiff's mental impairment and the course of psychiatric treatment. She further argues the ALJ's other reason for rejecting the opinion, that it is inadequately supported by clinical findings, is not persuasive because Dr. Henderson relied on the psychological profile developed by psychologist Dr. Miller who provided detailed clinical findings, such as a mental status examination. Additionally, Plaintiff argues the ALJ's statement that Dr. Henderson's opinion lacks objective medical evidence is belied by the record and, if his opinion is credited, it supports a finding of disabling mental impairments.

In opposition, Defendant argues the ALJ afforded less weight to Dr. Henderson's assessment because there were no significant objective treatment records that would support Dr. Henderson's assessment besides the one-time mental examination letter relied upon by Plaintiff.

The ALJ explains he gives less weight to Dr. Henderson's medial source statement and GAF dated June 7, 2013, because there are no significant objective treatment records to support the assertions of disability. AR at 39. He further explains GAF scores are of limited evidentiary value. *Id*. The ALJ also states a mental status exam was not completed

and the treatment plan appeared conservative and limited to medication management. *Id*. at 38.

In his evaluation date June 7, 2013, Dr. Henderson explains he saw Plaintiff for the last year every other month for medication monitoring. *Id*. at 313. He indicates she showed some improvement "but continues to have symptoms of auditory hallucinations and problems with depression." *Id*. He notes there has been very little improvement in her basic mental condition. *Id*. at 314. He opines that Plaintiff:

> has a moderate inability to comprehend and follow instructions. She has a moderate inability to perform simple and repetitive tasks. She has a severe inability to maintain a work pace appropriate to a given work load. She has a severe inability to perform complex and varied tasks. She has a severe inability to relate to other people beyond giving and receiving instructions. She has a severe inability to influence people. She has a severe inability to make generalizations, evaluations and decisions without immediate supervision. She has a severe inability to accept and carry out responsibility for direction, control and planning.

*Id*. Dr. Henderson diagnosed Plaintiff with major depression, recurrent type with psychotic features and post traumatic stress disorder. He notes there has been no change in her mental status since June 1, 2013, when she was last seen. *Id*.

As noted by the ALJ, there is a lack of treatment records to support the opinion. Contrary to Plaintiff's assertion, Dr. Henderson's report does not indicate he relied on Dr. Miller's psychological profile. The Court notes, in support of her claim that Dr. Henderson relied upon a psychological profile provided by Dr. Miller, Plaintiff cites to Dr. Miller's psychological evaluation dated July 25, 2014. It is impossible for Dr. Henderson to rely on an evaluation conducted after the date of his evaluation. The Court finds the ALJ did not err by giving Dr. Henderson's opinions less weight. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (Finding an ALJ may discredit a treating physician's opinion that are unsupported by objective medical findings).

**4. Dr. Miller**

Plaintiff contends the ALJ summarily dismissed Dr. Miller's report as lacking objective evidence but, she argues, Dr. Miller, a clinical psychologist, conducted objective

clinical tests on Plaintiff and concluded that Plaintiff was suffering from severe depressive disorder and psychosis. Additionally, Plaintiff maintains Dr. Miller reviewed her medical records and conducted an interview when diagnosing Plaintiff with major depressive disorder and assigned the claimant a GAF score of 50, indicative of severe psychiatric impairment. Additionally, Plaintiff argues the ALJ's statement that Dr. Miller's opinions lack objective medical evidence is belied by the record. Plaintiff contends if Dr. Miller's report is credited, it would support a finding of disabling mental impairments.

In opposition, Defendant argues there were no objective treatment records that would support Dr. Miller's extreme assessment. Therefore, the ALJ properly rejected the unsupported and conclusory statements.

The ALJ gave less weight to Dr. Miller's July 25, 2014 medical source statement which he described as a one-time psychological evaluation. AR at 39. The ALJ explained the objective treatment records did not support the findings contained therein. *Id*. Plaintiff does not dispute there is a lack of medical treatment records to support the one-time evaluation. As such, the Court finds the ALJ did not err in rejecting Dr. Miller's opinion.

## C. Fibromyalgia

Plaintiff maintains she suffers from both CTS and fibromyalgia which prevent her from using her hands for work. Because Plaintiff did not raise fibromyalgia as a disabling impairment at the hearing, Defendant contends it is waived. Defendant argues Plaintiff's attempt to rely on a record containing an MRI for cervical spasms suggested she had fibromyalgia, with Plaintiff never having alleged disability based on fibromyalgia before or at the hearing, improperly shifts the burden on the ALJ to prove and discuss all impairments. In reply, Plaintiff argues she was not diagnosed with fibromyalgia until January 28, 2014, after she filed her application, and the ALJ had access to Dr. Grisolia's records which included a diagnosis for fibromyalgia.

The Ninth Circuit has held that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearing in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Plaintiff was

represented by counsel at the hearing held in November 2014, after she says Dr. Grisolia diagnosed her with fibromyalgia.  Plaintiff suggests *Meanel* was overruled by the Supreme Court in *Sims v. Apfel*, 530 U.S. 103 (2000) that held claimants need not exhaust issues before the Appeals Counsel to preserve judicial review.  However, the Ninth Circuit subsequently determined *Meanel* remains binding precedent for proceedings before an ALJ, reasoning that the Court in *Sims* limited the holding to failure to exhaust before the Appeals Counsel, when it "specifically noted that '[w]hether a claimant must exhaust issues before the ALJ" was not before the Court.  *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).  Accordingly, *Meanel* is binding precedent here, where Plaintiff failed to raise fibromyalgia as an impairment at the hearing before the ALJ.  As such, fibromyalgia will not be considered by this Court.

**D.  Carpal Tunnel**

Plaintiff maintains her records demonstrate she suffers from disabling CTS.  She contends the ALJ disregarded Dr. Grisolia's treating records and ignored the fact Drs. Grisolia and Sidrick recommended hand surgery but Plaintiff was unable to afford to pay for surgery.  Plaintiff maintains this demonstrates the ALJ's reliance on a lack of evidence of more aggressive treatment to demonstrate Plaintiff's symptoms were not severe was erroneous.

Additionally, Plaintiff contends the ALJ stated reasons for concluding Plaintiff's CTS is not severe are not substantiated by the record.  She maintains the evidence demonstrates Dr. Grisolia recommended wrist splints, possible surgery, and other tests to evaluate the severity of Plaintiff's CTS and there was no improvement after six months of splinting.  She also points to Dr. Sidrick's treatment plan for her right hand pain and wrist splint. Additionally, Plaintiff contends she was referred to an orthopedist for consideration of surgical intervention.

In opposition, Defendant contends the ALJ noted Dr. Sidrick's records provided very limited information and no objective findings.  Specifically, Defendant contends the ALJ noted Dr. Sidrick provided very scarce information besides a list of problems in a

progress note dated January 2013 and on June 27, 2013, Dr. Sidrick reported Plaintiff complained she could not work because of hand pain and the only treatment regimen was limited medication therapy.  Defendant further contends Dr. Grisolia evaluated Plaintiff for possible bilateral CTS and headaches on July 27, 2013, but there were no objective physical examination findings, no nerve conduction studies, and the neurological exam indicated she had normal strength in the lower extremities, brisk reflexes with no evidence of polyneuropathy, and intact gait and coordination.

In the written decision, the ALJ noted Plaintiff had been evaluated for CTS but states her testimony and the objective evidence demonstrates the condition "should be amendable to proper control by adherence to recommended medical management and medication compliance."  AR at 35.  The ALJ further notes there is no evidence of functional limitations related to her CTS and finds it is not a severe impairment.

As noted above, the ALJ failed to consider additional treatment records from Dr. Grisolia which discuss Plaintiff's CTS.  *See* AR at 316, 334.  There are additional treatment records indicating ongoing treatment for CTS by Dr. Sidrick.  *See Id*. at 296, 329, 330.  The Court finds the ALJ's determination that Plaintiff's CTS is not severe is not supported by the evidence of record.  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (Explaining "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individuals [sic] ability to work.").

**E.  Plaintiff's Credibility**

Plaintiff argues the ALJ erred in finding her testimony was not credible.  She maintains she testified about her daily activity due to the effects of her mental problems.  She contends her treating physicians noted that she had severe cognitive impairments and memory loss.  She also argues the fact that she can engage in certain activities does not contradict an assertion of disability.

In opposition, Defendant argues the ALJ properly discounted Plaintiff's testimony. Specifically, Defendant contends the ALJ noted Plaintiff's allegations of severity of her

impairments were not supported by the treatment records and the records do not contain findings that would support additional restrictions beyond the ALJ's RFC finding. Defendant further contends the ALJ noted there was very little support to corroborate Plaintiff's allegations absent the conclusory letters from Plaintiff's doctors.

The ALJ's credibility finding must be properly supported by the record and "sufficiently specific to assure a reviewing court that the ALJ did not arbitrarily discredit a claimant's subjective testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). An ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Unless an ALJ makes a finding of malingering based on confirming evidence, the ALJ may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. *Id*. at 883.

The ALJ determined Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. AR at 38. The ALJ explained her allegations regarding the severity of her symptoms and limitations are not supported by the objective evidence of record. *Id*. at 39 The ALJ's explanation for discrediting Plaintiff's statements regarding her symptoms and limitations lacks the required specificity.

**F.  Request to Award Benefits**

In the event, the Court finds error, Plaintiff requests the Court reverse the decision and remand with instruction to award benefits. Plaintiff contends the case presents a full

record that supports the conclusion she is disabled.  Defendant contends the proper remedy is remand for further administrative proceedings.

In certain circumstances, under the credit-as-true rule, a court may award benefits rather than remand a matter for additional proceedings.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  The credit-as-true rule is appropriate only when "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id*.  Even if all conditions are met, a court should remand if the "record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. at 1021.  In light of Plaintiff's failure to raise fibromyalgia before the ALJ, the Court finds the record is not fully developed and may be further developed on remand.  Additionally, it is unclear, based on the record, whether Plaintiff is disabled.  Accordingly, Plaintiff's request for an immediate award of benefits is DENIED.

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for judgment (ECF No. 40) is **GRANTED**.
2. Plaintiff's motion for summary judgment (ECF No. 11) is **GRANTED**.  The matter is **REMANDED** for further proceedings.
3. Defendant's cross-motion for summary judgment (ECF No. 14) is **DENIED**.
4. The Clerk of Court shall enter judgment accordingly.

DATED:    March 25, 2024

_____
JOHN A. HOUSTON
United States District Judge